UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA ANN BAUER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security Administration,<br><br>Defendant. | ) Case No. CV 11-8805-SP<br>)<br>)<br>)<br>) **MEMORANDUM OPINION AND**<br>) **ORDER**<br>)<br>)<br>)<br>)<br>) |

**I.**

**INTRODUCTION**

On November 2, 2011, plaintiff Sheila Ann Bauer filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Supplemental Security Income ("SSI") benefits. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Four issues are presented for decision here: (1) whether the Administrative Law Judge ("ALJ") properly considered the evidence of a medically determinable

severe mental impairment; (2) whether the ALJ properly evaluated plaintiff's credibility and subjective symptoms; (3) whether the ALJ properly discounted a lay witness's statements; and (4) whether the ALJ properly determined, at step four, that plaintiff is capable of performing past relevant work. Pl's Mem. at 3-13, 13-16, 16-19, 20-21; Def.'s Mem. at 2-6, 6-9, 9-10, 10-11; Reply at 1-5, 5-8, 8-9, 9-10.

Having carefully studied, inter alia, the parties' papers and the Administrative Record ("AR"), the court finds that, as detailed herein, the ALJ erred in evaluating the medical evidence. Because, under the circumstances here, this finding is dispositive of the instant matter, the court does not reach the remaining issues. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-three years old on the date of her December 16, 2009 administrative hearing, has a ninth grade education and trade school training. AR at 50-51; *see* AR at 128. Her past relevant work includes employment as a stock clerk. *Id.* at 52-53.

On April 28, 2008, plaintiff applied for SSI, alleging that she has been disabled since February 20, 2008 due to bipolar disorder, anxiety, major depressive disorder, obsessive-compulsive disorder, and insomnia. *See* AR at 124, 130. Plaintiff's application was denied initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 58, 59, 60-64, 65, 66-70, 71-72.

On December 16, 2009, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 42-52, 55. The ALJ also heard testimony from Gregory S. Jones, a vocational expert ("VE"). *Id.* at 52-55; *see also id.* at 99-100. On January 13, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 24-31.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff has not engaged in substantial gainful activity since April 28, 2008, the date she applied for SSI. AR at 26.

At step two, the ALJ found that plaintiff suffers from medically determinable impairments consisting of dysthymic disorder and anxiety disorder, but concluded that these impairments are non-severe.[1] *See* AR at 26. The ALJ nonetheless proceeded through steps three and four. *Id.*

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 26.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[2] and determined that she can perform a full range of work at all exertional levels, but is mildly limited in: understanding and remembering tasks for a sustained period; concentration and persistence; socially interacting with the general public; and adapting to workplace changes. AR at 26.

The ALJ found, at step four, that plaintiff is capable of performing past relevant work as a stock clerk (Dictionary of Occupational Titles No. 299.367-014). AR at 30. The ALJ therefore concluded that plaintiff was not suffering from a disability as defined by the Social Security Act. *Id.* at 24, 31.

---

[1] Dysthymic disorder is a mood disorder characterized by "[d]epressed mood for most of the day, for more days than not, as indicated either by subjective account or observation by others, for at least 2 years." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 380 (4th Ed. 2000).

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR at 1-3, 19. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g) (2010). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends the ALJ erred in evaluating the medical evidence and concluding that she does not suffer from a severe mental impairment. *See* Pl.'s Mem. at 3-13; Reply at 1-5. Particularly, plaintiff maintains that the ALJ arrived at this improper conclusion by erroneously rejecting the opinions of her treating psychiatrists, Dr. Gerald Ray Watkins and Dr. Brad Johnson. *See* Pl.'s Mem. at 8-10; Reply at 1-4. The court agrees, and also finds that the ALJ improperly rejected the opinion of Thomas H. Seibt, a marriage and family therapist.

The threshold inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. § 416.920(a)(4)(ii) (2012); *see Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) ("At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." (citation omitted)). At step two, it is important that the ALJ consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. *Smolen*, 80 F.3d at 1290. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"[3] *Id.* (citations omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling

---

[3] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (internal citations omitted).

("SSR") 85-28,[4] 1985 WL 56856, at *3).

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 416.927(c) (2012) (prescribing the respective weight to be given the opinion of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons."). "Even if the treating doctor's opinion is contradicted by

---

[4] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

6

another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

Having duly reviewed the record and the parties' papers, the court finds that the ALJ improperly rejected the opinions of Dr. Watkins, Dr. Johnson, and therapist Seibt.[5]

First, the ALJ failed to provide a legally sufficient reason for rejecting the opinion of either Dr. Watkins or therapist Seibt, who both made specific findings relevant to plaintiff's mental impairment. For instance, during an examination on April 25, 2008, Dr. Watkins found plaintiff "very concrete and simple-minded, and far from psychologically-minded." AR at 190. Dr. Watkins noted that plaintiff "look[ed] like she ha[d] not slept for a long-time (bleary-eyed)" and exhibited "mild increase in the rate of her speech, but not pressured speech." *Id.* Similar to his previous diagnoses, on April 25, 2008, Dr. Watkins diagnosed plaintiff with:

---

[5] Although Seibt, a marriage and family therapist, is not an "acceptable medical source" for establishing a medically determinable impairment, his opinion is still entitled to some weight. *See* 20 C.F.R. § 416.913(a), (d)(1) (2011) (therapists are not considered acceptable medical sources under the regulations, but instead are treated as "other sources"). Opinions from "other sources" are not entitled to the same standard of review afforded physicians; instead, the opinions from "other sources" are reviewed under the standard afforded lay witnesses. *See Turner v. Comm'r*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (social workers are not considered acceptable medical sources under the regulations, but instead are treated as other sources). Thus, if an ALJ wishes to discount such opinions, the ALJ must give reasons that are germane to each witness for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

anxiety disorder, generalized; obsessive-compulsive disorder; insomnia due to mental disorder, hyposomnia related to axis I or II disorder; and bipolar 2 disorder, major depressive episode, atypical. *Id.* at 182, 190; *see also id.* at 192-98. Likewise, on February 20, 2008, therapist Seibt noted, inter alia, that: plaintiff's gait and posture was "nervous, anxious, tense, jittery"; plaintiff's motor activity was agitated; plaintiff's mood was "confused, obsessive, anxious and nervous"; plaintiff's affect was "Congruent with her moods"; plaintiff's speech was "rapid and labile"; plaintiff's judgment was "somewhat impaired by her anxiety"; and plaintiff's impulse was "impaired by her mental state." *Id.* at 202. Therapist Seibt diagnosed plaintiff with: anxiety disorder, generalized (primary encounter diagnosis); obsessive-compulsive disorder; and attention deficit hyperactivity disorder combined type. *Id.*

Although the ALJ fairly summarized both opinions in his decision, he failed to provide any reason for disregarding them. *See* AR at 28. Instead, the ALJ simply adopted the opinion of Dr. Stephan Simonian, a consultative examining physician. *Id.* By adopting Dr. Simonian's opinion – which contradicts the opinions of Dr. Watkins and therapist Seibt (*compare id.* at 238-43, *with id.* at 190-203) – the ALJ implicitly rejected the opinions of Dr. Watkins and therapist Seibt. *See Smith ex rel. Enge v. Massanari*, 139 F. Supp. 2d 1128, 1133 (C.D. Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter). The ALJ therefore committed reversible error by failing to provide any reason for disregarding Dr. Watkins's or therapist Seibt's opinion. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988) ("We find nothing in the ALJ's decision which indicates why [the treating physician's] medical findings, reports, and opinion were disregarded. Because the ALJ did not state reasons based on substantial evidence, we reverse the decision to deny benefits.").

To the extent the ALJ rejected Dr. Watkins's or therapist Seibt's opinion

8

based upon his conclusion that Dr. Simonian's opinion "is generally consistent with the entire record as a whole" (*see* AR at 28), such assessment is impermissibly broad and conclusory, and "does not achieve the level of specificity" required to justify the ALJ's rejection of those medical opinions. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required"); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (the ALJ's rejection of treating physician's opinion on the ground that it was contrary to the clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Second, the ALJ improperly rejected Dr. Johnson's opinion contained in the December 8, 2009 Mental Residual Functional Capacity Assessment form ("MRFCA"). Although the record contains only page two of the MRFCA, it appears from the partial MRFCA that Dr. Johnson opined various limitations resulting from plaintiff's mental impairments.[6] The ALJ rejected this evidence

---

[6] Dr. Johnson opined in the MRFCA that: (1) plaintiff is markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) plaintiff is moderately limited in her ability to interact appropriately with the general public; (3) plaintiff is not significantly limited in her ability to ask simple questions or request assistance; (4) plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors; (5) plaintiff is moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (6) there is no evidence that plaintiff is limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (7) plaintiff is moderately limited in her ability to respond appropriately to changes in the work setting; (8) plaintiff is not significantly limited in her ability to be aware of normal hazards and take appropriate precautions; (9) plaintiff is markedly limited in her ability to travel in unfamiliar places or use public

1  because it lacked "identifying information" such as a "name or social security
2  number." *Id.* at 30.  But by doing so, the ALJ failed to meet his "duty to fully and
3  fairly develop the record and to assure that the claimant's interests are considered
4  . . . even when the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d
5  1177, 1183 (9th Cir. 2003) (alteration in original) (citation omitted) (internal
6  quotation marks omitted).  Because the ALJ found this report ambiguous (no
7  identifying information) and because only page two of the report was provided, the
8  ALJ should have developed the record further by recontacting Dr. Johnson
9  regarding this report.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)
10 ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous
11 or insufficient for the ALJ to make a disability determination." (citations omitted));
12 *Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only
13 "when there is ambiguous evidence or when the record is inadequate to allow for
14 proper evaluation of the evidence" (citation omitted)).

15     Defendant argues that any error by the ALJ in finding plaintiff did not have a
16 severe mental impairment was harmless, since the ALJ did not stop at step two, but
17 instead proceeded through steps three and four.  Def.'s Mem. at 2.  But the ALJ's
18 error in improperly rejecting the opinions of Dr. Watkins, Dr. Johnson, and therapist
19 Seibt was not limited to step two.  The ALJ's improper assessment of the medical
20 evidence affected the other steps as well, including the ALJ's determination of
21 plaintiff's RFC.  *See* AR at 26-30.  As such, the ALJ's error was not harmless.

22     Having determined that the ALJ improperly rejected the opinions of Dr.
23 Watkins, Dr. Johnson, and therapist Seibt, the court will not reach plaintiff's
24 remaining contentions.  *See* Pl.'s Mem. at 13-16, 16-19, 20-21; Reply at 5-8, 8-9, 9-
25 10.  The ALJ's credibility and step four findings should be reviewed in light of the

---

transportation; and (10) plaintiff is moderately limited in her ability to set realistic goals or make plans independently of others.  AR at 348-49; *see* AR at 351.

10

record as a whole, which in this case could include the opinions of Dr. Watkins, Dr. Johnson, and therapist Seibt. The ALJ will need to revisit all of these issues on remand, as discussed below.

## V.
## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister*, 888 F.2d at 603. Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate the medical evidence. On remand, the ALJ shall take any steps needed to fully develop the record, and thereafter reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. The ALJ shall also reconsider plaintiff's subjective complaints with respect to her mental impairments and the resulting limitations, and either credit her testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it. The ALJ shall likewise reconsider any lay testimony, and either credit that testimony or provide sufficient reasons for rejecting it. In addition, if necessary, the ALJ shall obtain additional information and clarification regarding plaintiff's functional limitations. The ALJ shall then proceed through steps two through five to determine what work, if any,

plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: September 11, 2012

_____
SHERI PYM
UNITED STATES MAGISTRATE JUDGE